The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant at all relevant times.
1. Plaintiffs average weekly wage was $249.81.
2. The depositions of Dr. David Tucker and Dr. Barry Johnson are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff, age thirty-six at the time of the hearing before the Deputy Commissioner, began working for defendant-employer as a machine operator in January of 1998. Plaintiff usually worked the late shift. Plaintiff was scheduled to work from 7 p.m on 4 October 1998 to 7 a.m. on 5 October 1998.
2. Plaintiff alleges that on 4 October 1998, she was running two machines because another employee was out that day and as she was walking on the catwalk between the two machines, she tripped over an air hose that was lying on the floor and fell, injuring her right foot. Plaintiff further contends that she told co-workers Tenisha Cobb and Myra Spratley about the accident and that plaintiff reported the accident to her supervisor, Carroll Garrett, during the next shift that plaintiff worked. However, the greater weight of the credible evidence conflicts with the plaintiffs story.
3. Prior to plaintiffs alleged injury, on Friday night, 2 October 1998, plaintiff first told Myra Spratley that her right foot hurt. Plaintiff again mentioned it to Ms. Spratley on Saturday and Sunday, the third and fourth of October 1998. However, plaintiff never told Ms. Spratley that she tripped over an air hose.
4. On 4 October 1998, the day of the alleged injury, plaintiff saw another co-worker, Ernest Robinson, in the canteen on break. Again although plaintiff told him that her foot hurt, she significantly did not mention an accident.
5. On 4 October 1998, Tenisha Cobb, another co-worker, walked by plaintiff and noticed her limping. Ms. Cobb asked plaintiff what was wrong. Plaintiff told Ms. Cobb that she hurt her foot. However, once again, plaintiff did not indicate that she tripped over an air hose.
6. During the next shift that plaintiff worked, at around 8:15 p.m. on 4 October 1998, plaintiff asked her supervisor, Carroll Garrett, if she could leave to go to the doctor because her right foot was bothering her. Mr. Garrett asked plaintiff if she could work through the dinner hour and then leave. Plaintiff agreed; however, about an hour later, plaintiff returned to Mr. Garrett and indicated that she needed to leave. Plaintiff told Mr. Garrett that her foot hurt when she awoke that morning. Significantly, when Mr. Garrett inquired of plaintiff how she hurt her foot, plaintiff replied that she did not know. There was no mention of any injury at work and Mr. Garrett allowed plaintiff to leave around 9 p.m.
7. Plaintiff went to the Annie Penn Hospital emergency room later that night where she reported pain in her right foot all day. However, once again, plaintiff reported no injury. Although the x-rays showed no fracture, Dr. Powell diagnosed a possible sesamoid fracture.
8. Plaintiff was not scheduled to work the next two days. Then, on 7 October 1998 at approximately 9:15 a.m., plaintiff called Pat Ray, defendants human resources manager, and reported that her foot started hurting Sunday morning 4 October 1998 because there was no mat on the catwalk where she worked. Plaintiff did not mention a specific incident that caused an injury. In fact, when Ms. Ray asked plaintiff if there had been any accident, plaintiff responded in the negative.
9. Although plaintiff initially contended that her foot pain began as a result of mats not being present on the catwalk on 4 October 1998, in fact, mats were placed on the catwalk in front on the plaintiffs workspace on 1 October 1998, several days before the date of alleged onset of pain.
10. On 8 October 1998, plaintiff was examined by Dr. David Tucker, a podiatric surgeon. Plaintiff reported to Dr. Tucker that her right big-toe joint was painful and that the pain began on 4 October 1998. Once again, plaintiff did not relate any specific injury. Dr. Tucker diagnosed a transverse fracture through the tibial sesamoid bone and placed her in a surgical shoe and began conservative treatment.
11. Later on 8 October 1998, at approximately 4:15 p.m., plaintiff met with Ms. Ray and Bill Woodard, operations manager for defendant. Plaintiff did not report a specific incident but indicated that on 4 October 1998, there was no rubber mat on the catwalk in front of the machine where she worked and that around 5:00 a.m. that day, her foot started bothering her. Furthermore, plaintiff believed that the pain was due to extensive walking on the catwalk without a mat. Mr. Woodard and Ms. Ray explained to plaintiff that mats were installed on 1 October 1998. When they specifically asked plaintiff if there had been an accident that day, plaintiff once again indicated that there had not. Importantly, plaintiff had the opportunity to report any specific incident and did not mention an incident with an air hose or any other incident. Consequently, Ms. Ray explained to plaintiff that her foot injury probably would not be covered by workers compensation since there was no specific incident or accident.
12. Significantly, on 9 October 1998, around 3 p.m., the day after plaintiff was told that her foot injury probably would not be covered by workers compensation because there was no incident or accident, plaintiff remembered an incident with an air hose and telephoned Ms. Ray to report that she tripped on an air hose on 4 October 1998 but she did not fall. This incident is inconsistent with plaintiffs previous histories in which she reported as the cause of her foot pain either nothing associated with her employment or the lack of a mat on the catwalk. This conveniently remembered history of an incident lacks credibility and is accordingly afforded little weight.
13. Plaintiff continued to receive conservative treatment with Dr. Tucker until he released her to return to work on 4 January 1998. Plaintiff returned to her regular duty with the defendant on 4, 5, 8 and 9 January 1998 but has not worked since that time.
14. There is conflicting medical evidence regarding whether plaintiff now has reflex sympathetic dystrophy of her right foot and is unable to work.
15. Due to the greater weight of the evidence and the numerous credible witnesses, including Dr. Tucker and Dr. Johnson, whose testimony conflicts with plaintiffs allegation that she tripped over an air hose, along with the inconsistencies in the histories provided by plaintiff, plaintiffs testimony is not credible and the greater weight of the evidence fails to establish that she sustained an injury by accident on 4 October 1998.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant on 4 October 1998. Therefore, plaintiff is entitled to no benefits under the North Carolina Workers Compensation Act. N.C.G.S. 97-2(6).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiffs claim is hereby and the same shall be denied.
2. Furthermore, plaintiffs motion for additional evidence is hereby denied.
2. Each side shall pay its own costs.
This the ___ day of April 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER